WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC 1 6 2013

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **WILLIAM TROY LOWE** | **CIVIL ACTION NO: 12-2868** |
| **VERSUS** | **JUDGE DONALD E. WALTER** |
| **METROPOLITAN INS. &**<br>**ANNUITY CO.** | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the Court is a Motion to Enforce Multidistrict Litigation ("MDL") Final Judgment and/or Motion to Dismiss For Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, a Motion for Summary Judgment  [Doc. 32] filed by Defendant Metropolitan Tower Life Insurance Co. ("MetLife"). The Plaintiff, William Troy Lowe ("Lowe"), opposes this motion. [Doc. 35]. Having reviewed the motion, the submissions of the parties, the policy, and the applicable law, MetLife's motion to enforce judgment in MDL action and motion for summary judgment are hereby **GRANTED**.

## I. BACKGROUND

### A. The Policy

This case arises from an insurance policy dispute between Lowe and MetLife. Lowe purchased a flexible premium life insurance policy (MetLife Policy No. 870 847 185 UL) from MetLife on or about September 1, 1987. [Doc. 1; Doc. 32, Exh. A (Policy)].  Under the terms of the policy, the policy had a face value of $250,000 and Lowe was required to pay a planned premium of $156.84 per month. The policy also stated that

1

> THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL
> DATE IF SUFFICIENT PREMIUMS ARE PAID. THE PLANNED PREMIUM ...
> MAY NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE
> IN FORCE.

The policy further stated that no sales representative or other person except high-level MetLife leadership may "make or change any contract or insurance" or "make any binding promises about insurance benefits" or "change or waive any of the terms of an application, receipt or policy." *Id.* (Policy).

Lowe alleges that he was assured by an agent that the premium would always be $156.84 per month. [Doc. 1]. Lowe argues that he only later discovered that the insurance policy provides that the premium could be increased in order to keep the policy and coverage in force, and that notice would be given at least three months prior to an increase in premiums. Lowe further discovered that MetLife had been paying the increase in premiums by deducting funds from an "accumulation fund" without notifying him. *Id.* In August 2012, Lowe received notice that, unless a remittance of $1,187.46 was paid before August 31, 2012, the policy would lapse. [Doc. 32, Exh. J-1].

Lowe subsequently filed a petition for declaratory judgment in the Third Judicial District Court, Parish of Lincoln, Louisiana, on October 8, 2012. [Doc. 1-1]. Specifically, Lowe's petition sought a declaratory judgment that MetLife had no legal authority to increase the premiums, no legal authority to take funds out of the accumulation fund, and no legal authority for canceling the policy. [Doc. 1-2]. MetLife removed the action to this Court on November 12, 2012, alleging diversity of citizenship jurisdiction. *Id.*

**B. The MDL Action**

MetLife's motion to enforce is premised upon the Class Settlement and Release entered in

the MDL order in the case *In re Metro. Life Ins. Co. Sales Practices Litig.*, 96-179, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999) ("MDL order"). In short, the MDL litigation involved complaints filed against MetLife and its entities regarding the sale, servicing, and administration of certain life insurance policies and annuities purchased from 1982 through 1997 that were made pursuant to an individual sale.[1] The Proposed Settlement Order required all potential class members who did not wish to participate in the proposed settlement to submit written requests in order to opt out. [Doc. 32, Exh. D and Exh. F].

As part of the Settlement Order and Final Judgment, the MDL court entered a permanent injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), barring all settlement class members from, among other things, filing, commencing, prosecuting, maintaining, instituting, or participating in any claim or lawsuit related to the claims asserted in the MDL litigation. [Doc. 32, Exh. C (Final Judgment and Stipulation of Settlement)].

The Final Order dismissed all claims made by members of the settlement class, and a "Release and Waiver" was entered that provides a broad waiver of claims with respect to future claims. [Doc. 32, Exh. H (Final Order)]. Notably, the release provides that class members

> shall release and discharge the Releasees from any and all claims or causes of action—known or unknown—that were or could have been asserted in this action with respect to Policies .... [and] agree that they release, acquit and forever discharge all Releasees from and shall not now or hereafter institute, participate in, maintain, maintain a right to or assert against the Releasees, either directly or indirectly... *Id.*

The MDL order was registered in this district. [Doc. 32, Exh. E].

---

[1] *See* Doc. 32, Exh. C and G. The settlement class is defined as "all persons or entities ('Class Members') who have or had an ownership interest in any permanent life insurance policy ('Policy')...issued by Metropolitan Life Insurance...during the period from January 1, 1982 through December 31, 1997 pursuant to an individual sale."

By the MDL court's directive, Rust Consulting, Inc. was appointed by MetLife to mail class notice packages to each potential class member—all persons who purchased MetLife life insurance policies and annuities during the specified time frame noted *supra*.[2] Rust Consulting was also tasked with receiving exclusion requests. The class notice package specifically informed the recipients that all potential settlement class members who wished to exclude themselves from the settlement class had to "submit an appropriate, timely written request for exclusion..." (Doc. 32, Exh. F, Lake Aff.). The class notice package also contained information regarding an upcoming fairness hearing.[3] The MDL court found that the class notice package complied with the requirements of Federal Rule of Civil Procedure 23, and approved the settlement as fair, reasonable, and adequate.

## C. Lowe Did Not Opt Out of the Class

According to Rust Consulting's notice database, a class notice package was mailed to Lowe at 1006 Spring Avenue, Ruston, Louisiana 71270, on or about September 27, 1999. (Doc. 32, Exh. F, Lake Aff.). The class notice package included detailed information regarding the class action and contained specific instructions for excluding oneself from the class. *Id.* As the MDL court explained, the class notice package provided "substantial additional information of assistance to Class Members, in as plain and concise a manner as possible for such a complex settlement." [Doc. 32, Exh. G at p. 30].

According to Rust Consulting's records, Lowe never opted out of the class and did not elect

---

[2] *See In re Metro. Life Ins. Co. Sales Practices Litig.*, 96-179, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999) (discussing the MDL court's directive); Doc. 32, Exh. G.

[3] During the fairness hearing, the MDL Court would consider whether to grant final certification to the class for settlement purposes, and whether to approve the proposed settlement as fair, reasonable, and adequate. [Doc. 32, Exh. D]. *See also* discussion *infra*.

4

to participate in the claims evaluation process. (Doc. 32, Exh. F, Lake Aff.). The Rust Consulting

database also shows that a General Relief award letter was sent to Lowe at his Ruston address,

notifying him of the settlement, on or about May 3, 2000. *Id.* Rust Consulting did not receive notice

that any of the mailings to Lowe were undeliverable.

### D. The Instant Motion

On July 12, 2013, MetLife filed the motion now before this Court [Doc. 32] along with a

supplemental memorandum. [Doc. 33]. Lowe filed an opposition to the motion [Doc. 35] and

MetLife then submitted a reply. [Doc. 37].

**II. LAW AND ANALYSIS**

### A. Standard of Law

This Court will analyze this case as a summary judgment. Summary judgment is proper

when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any

affidavits," the court determines there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The

party seeking summary judgment always bears the initial responsibility of informing the court of the

basis for its motion and identifying those portions of the record that it believes demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

party seeking summary judgment need not produce evidence negating the existence of material fact,

but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S.

at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other

party must come forward with specific facts showing that there is a genuine issue of material fact

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing

5

of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,'

by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue

of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding

to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts

that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and

all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v.*

*Cromartie*, 526 U.S. 541, 552 (1999).

**B. The MDL Order is Binding Upon Lowe**

This case hinges on whether the MDL order is binding upon Lowe. After due consideration,

this Court concludes that the MDL order is binding and Lowe's claims are therefore barred. Federal

Rule of Civil Procedure 23(c) states that "[f]or any class certified under Rule 23(b)(3), the court must

direct to class members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P.

23(c). Rule 23 further requires that the notice shall advise class members that "the court will exclude

from the class any member who requests exclusion;" and that "whether or not favorable," the

judgment must include those "who have not requested exclusion, and whom the court finds to be

class members." *Id.*; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The Supreme Court

has explained that the appropriate inquiry involves "the 'reasonableness and hence the constitutional

validity of any chosen method...'" *Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

The MDL court concluded that the class notice procedure used by MetLife ensured that the

best practicable notice was given to the class and "was reasonably calculated, under the circumstances, to apprize Class Members of the pendency of the Action and of their right to object to or exclude themselves from the proposed settlement..." *In re Metro. Life Ins. Co. Sales Practices Litig.*, 96-179, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999). The MDL court also explained that the notice "was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice..." Finally, the MDL court concluded that the notice satisfied all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.*

Lowe's claims falls squarely within the scope of the MDL litigation. As discussed earlier, the class for the MDL order was comprised of the purchasers of permanent life insurance policies or annuities contracts, issued by MetLife pursuant to an individual sale, between January 1, 1982 and December 31, 1997. Lowe's action concerns MetLife Policy No. 870 847 185 UL. The policy was issued in 1987, during the relevant period of time for class member purposes.

This Court duly observes that an MDL order certainly does not provide insurance companies with a pass for any and all subsequent litigation. However, this Court finds that Lowe's claims clearly fall within the four corners of the MDL order. The plaintiffs' allegations in the MDL order specifically involved allegations regarding sales practices and claims that MetLife misrepresented policy information and concealed or omitted material information about the policies. *In re Metro. Life Ins. Co. Sales Practices Litig.*, 96-179, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999); Doc. 32, Exh. G (Findings of Fact and Conclusions of Law).

In a futile attempt to survive this motion, Lowe points to his alternative argument. Specifically, Lowe contends that even if notification was not required for the class action order to

7

be binding upon him, MetLife could not increase his premiums without providing him notice and had no right to take funds out of the "accumulation fund" to pay premiums without a request by petitioner or notification. [Doc. 35]. This Court stresses that the overarching issue in this case is whether Lowe may be held to the terms of the class action settlement which bars any claims on class policies. Notably, Lowe's arguments in response to MetLife's motion stem from the MDL action, either directly or derivatively. As such, Lowe's arguments fail to account for the broad language of the Release barring the future litigation of claims that "have been, could have been, may be or could be alleged or asserted now or in the future," and are "on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies..."[Doc. 32, Exh. H (Final Order- Release and Waiver)].

Lowe was subject to class notice procedure that was found by the MDL court to comply with the requirements of due process and the federal rules. According to a Senior Project Administrator of Rust Consulting, with personal knowledge of the Rust Consulting's records, a Class Notice Package was sent to Lowe with respect to MetLife Policy No. 870 847 185 UL. [Doc. 32, Exh. F, Lake Aff.]. The records show that it was sent to Lowe's Ruston address. Further, Rust Consulting did not receive notice from the Postal Service that the class notice package was undeliverable. Perhaps more importantly, Rust Consulting did not receive an exclusion request from Lowe. Finally, Rust Consulting mailed a General Relief award letter with respect to the above identified policy to Lowe's Ruston address. Once again, Rust Consulting did not receive notice that the award letter was undeliverable. *Id.*

Based upon these uncontested facts, this Court finds that Lowe was a class member to the MDL order. In *Greene v. Metro. Ins. & Annuity Co.*, CIV.A.07-2903(MLC), 2009 WL 1045016

(D.N.J. Apr. 20, 2009), a federal district court in New Jersey faced a very similar case. The court found that the insured's breach of contract claim was barred by this same class action settlement. Similar to the instant case, the court found that the insured's claims were precluded because the records showed that the insured was notified through first class mail and no notice was received from the post office that would indicate the notice was undeliverable even though the insured argued that he was never notified of the class action. *Id.* The court concluded that "[b]ecause plaintiff failed to opt out of the MDL Litigation class, he cannot now litigate claims regarding the terms of the Policy." *Id.* at 9.

For these reasons, the claims alleged by Lowe in this action are expressly barred by the settlement order, the final judgment, and permanent injunction entered by the MDL court. The Court will thus grant MetLife's motion for summary judgment on this issue.

## C. Lowe's Claims Barred by Res Judicata

This Court also finds that in addition to being barred by the release in the MDL order, Lowe's claims are also barred by res judicata. In brief, the doctrine of res judicata precludes parties from re-litigating claims that have been fully and fairly decided when (1) the issue adjudicated in the prior proceeding involves the same cause of action; (2) there is a final judgment on the merits; and (3) the party against whom the defense is asserted was a party or in privity with a party in the prior adjudication. *See Blonder–Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971); *Parklane Hosiery Co. v. Shores*, 439 U.S. 322, 326 n. 5 (1979). Res judicata applies to class actions in that "a judgment rendered in a class suit is res judicata as to members of the class who are not formal parties to the suit." *Hansberry v. Lee*, 311 U.S. 32, 42 (1940).

Upon careful review of the briefs and record and for many of the same reasons already

9

discussed, this Court finds that the elements of res judicata are satisfied in this case. The MDL court specifically found that the terms of the order "shall have *res judicata* and other preclusive effect in all pending and future claims..." [Doc. 32, Exh. H (Final Order)]. The Court will thus grant MetLife's motion for summary judgment on this issue as well.

### III. CONCLUSION

Having reviewed the motion, the submissions of the parties, the policy, and the applicable law, MetLife's motion to enforce judgment in MDL action and motion for summary judgment [Doc. 32] are hereby **GRANTED**. For the reasons assigned herein, this case is dismissed in its entirety.

**THUS DONE AND SIGNED**, Shreveport, Louisiana,  this the ___16th___ day of December, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE